Argued and submitted June 6, 2005, affirmed February 15, 2006

Florence Elaine WEIHL,
Personal Representative of the Estate of
William R. Weihl, deceased,
*Appellant,*

*v.*

ASBESTOS CORPORATION, LTD,
a Canadian corporation;
A. J. Zinda,
an Oregon corporation;
Atlas Turner, Inc.,
a foreign corporation,
fna Atlas Asbestos;
Bell Asbestos Mines, Ltd.,
a Canadian corporation,
individually and as successor-in-interest to
Atlas Turner, Inc., and Turner & Newell, PLC;
Bickford Construction, Inc.,
an Oregon corporation;
Bromley, Inc.,
an Oregon corporation,
dba Bromley Masonry, Inc.,
an assumed business name;
Congoleum Corporation,
a Delaware corporation;
E. J. Bartells,
a Washington corporation,
Foster Wheeler Corporation,
a New York corporation;
Holden Construction, Inc.,
an Oregon corporation;
Mason Supply Company,
an Oregon corporation;
Metropolitan Life Insurance,
a New York corporation;
P.S. Lord Mechanical Contractors,
an Oregon corporation;
Quimby Welding Supplies, Inc.,
an Oregon corporation;
Wm. Hammond Co.,
previously known as and successor-in-interest to

Ross B. Hammond Co.,
an Oregon corporation,
*Defendants,*
*and*

ASSOCIATED BUILDING CONTRACTORS, INC.,
an Oregon corporation;
Contractors Incorporated,
an Oregon corporation,
previously known and successor-in-interest to
Leo S. Wynans Company, Inc.,
an Oregon corporation;
Drake Management Company,
an Oregon corporation,
previously known and successor-in-interest to
Donald M. Drake Company,
FMD Corporation,
an Oregon corporation,
previously known and as successor-in-interest to
Donald M. Drake Company;
J.E. Dunn Northwest, Inc.,
an Oregon corporation,
previously known and successor-in-interest to
Drake Construction Company, Inc.,
Donald M. Drake Company,
and DII Oregon, Inc.,
Oregon corporation;
Fred Shearer & Sons, Inc.,
an Oregon corporation;
and Metalclad Insulation Corporation,
a California corporation,
individually and as successor-in-interest to
Northern California Insulation, Inc.,
Sweetser Enterprises, Pacific Asbestos & Supply,
and Pacific Insulation Services, Inc.,
*Respondents.*

0211-11911; A122068

129 P3d 748

Meagan A. Flynn argued the cause for appellant. With her on the opening brief was Preston Bunnell & Stone, LLP. With her on the reply brief was Preston Bunnell & Flynn, LLP.

Michael Merchant argued the cause for respondent Associated Building Contractors, Inc. With him on the brief were Margaret E. Schroeder and Black Helterline LLP.

Stephen McCarthy argued the cause for respondent Contractors Incorporated. With him on the brief was Lane Powell Spears Lubersky LLP.

J. Michael Mattingly argued the cause for respondents Drake Management Company, FMD Corporation, and J.E. Dunn Northwest, Inc. With him on the brief was Steven V. Rizzo, P.C.

Daniel Lindahl argued the cause for respondent Fred Shear & Sons, Inc. With him on the brief were Jeanne F. Loftis and Bullivant Houser Bailey, PC.

Margaret Leiberan argued the cause for respondent Metalclad Insulation Corporation. With her on the brief were James D. Case and Case & Dusterhoff.

Before Armstrong, Presiding Judge, and Brewer, Chief Judge, and Landau, Judge.*

BREWER, C. J.

## BREWER, C. J.

Plaintiff[1] appeals from the trial court's dismissal of his claim for damages for the mesothelioma that he allegedly developed as the result of exposure to asbestos in his employment. Each defendant moved for summary judgment on the ground that plaintiff had failed to identify any asbestos product to which plaintiff was exposed and for which that defendant was responsible. The trial court refused to consider evidence that plaintiff presented in opposition to the motions because plaintiff had failed to comply with an order that the court had entered regulating the pleading of product identification information in asbestos cases. On appeal, plaintiff attacks the validity of the order. We affirm.

The relevant facts are procedural and are generally undisputed. On November 22, 2002, plaintiff filed his complaint against defendants[2] and others, alleging that defendants had installed asbestos products during construction projects on various Portland public schools, that the asbestos subsequently released respirable fibers, and that plaintiff, who spent a number of years as a school district maintenance employee, had developed mesothelioma as a result of his contact with that asbestos. Plaintiff sought damages on theories of strict liability, negligence, and civil conspiracy. In the caption of the complaint plaintiff noted that it was a complex case and that it was subject to existing case management orders.

Plaintiff filed his complaint in Multnomah County, which has become the primary venue for state court asbestos litigation in Oregon. When the trial court entered the general orders that we discuss below, there were approximately 70

---

[1] Plaintiff William R. Weihl died after the court's judgment and the filing of the notice of appeal. His wife is the personal representative of his estate and has been substituted as the appellant. The briefs refer to William Weihl as the plaintiff, and we will also do so in this opinion.

[2] Before the trial court ruled on defendants' motions, plaintiff dismissed his claims against several parties. We use the term "defendants" to refer to those defendants whose motions for summary judgment the trial court granted and who are respondents on appeal.

pending asbestos cases. At the time of the motions for summary judgment in this case, there were more than 130 pending cases. In order to manage those cases effectively, in 2001 the presiding judge of the Multnomah County Circuit Court designated all asbestos cases as complex cases under UTCR 7.030 and assigned all of them to the same judge.[3] On August 31, 2001, the trial court entered several general orders governing different aspects of procedure in asbestos cases, including a "General Order Re: Administrative Matters." It explained that, in asbestos cases, "individual plaintiffs routinely file suit against a large number of defendants. A small number of law firms represent all the plaintiffs * * *. Many of the defendants are involved in many of the pending case[s]." In addition, "[t]here are substantial similarities in the issues involved in the asbestos exposure cases. They involve issues of law, fact, and case management that are different [from] other civil cases." Before it entered the general orders, the court gave lawyers who commonly represent either plaintiffs or defendants in asbestos cases, including plaintiff's attorneys, an opportunity to comment on the proposed orders. Plaintiff's attorneys were fully aware of the requirements of the general orders.

In its "General Order Re: Pleadings and Product Identification" (the general order), the trial court set out a procedure for the parties to follow in developing their pleadings. Its purpose in doing so was to "facilitate ease in pleadings, and to avoid numerous and redundant ORCP 21 motions to dismiss and to make more definite and certain[.]" To achieve that purpose, the general order permits plaintiffs "to proceed on complaints that might otherwise not be sufficiently specific to comply with Oregon's 'fact pleading' requirements," provided that they comply with the "product identification report" (PID) procedures that the general order establishes. Under the general order, a plaintiff must,

> "not later than 60 days after filing the complaint or 10 days after service of process, whichever is later,* * * file and provide to each defendant a written 'product identification report' specifying with reasonable particularity any alleged exposures of plaintiff to asbestos containing products for

---

[3] At present the cases are assigned to two judges.

which plaintiff seeks to establish liability as to each defendant."

The plaintiff may supplement and update the original PID by serving an amended PID no later than 105 days before trial. The court treats an amended PID as an amendment to the complaint. The general order explains that the

"purpose of the product identification report is to simplify the pleading of these claims and to assist defendants in evaluating their potential liability by requiring plaintiffs to supply sufficient information about the claims plaintiff expects to present at trial so as to enable defendants to defend plaintiff's claims. 'Product identification' is not to be construed as a 'discovery' obligation of plaintiff, but instead, as a 'pleading' obligation of plaintiff."

The general order requires the plaintiff to include in the PID the identity of the plaintiff's employer, if any, the dates and duration of exposure to asbestos, the site of the exposure, the product to which the plaintiff was exposed, and the defendant's connection with that exposure. A plaintiff who does not know all of the necessary information should include as much as the plaintiff does know. Failing to provide a PID has significant consequences:

"If a plaintiff fails to produce any product identification as to a particular product and a particular defendant in a timely manner (or does not otherwise plead the Complaint in a manner that complies with Oregon's 'fact pleading' requirement) as required by this General Order, unless the Court allows plaintiff to file and serve an amended product identification report, pursuant to the standards set forth in ORCP 23A, *plaintiff shall not be permitted to offer product identification evidence as to a particular product and a particular defendant in response to motions for summary judgment or at trial.*"

(Emphasis added.)

In his complaint, plaintiff first identified each defendant and its business in a general fashion. He then alleged that defendants were "regularly engaged in the business of manufacturing, designing, processing, marketing, distributing, applying, repairing, and/or selling products containing asbestos fiber for use in electrical products and supplies and

other materials in the construction and maintenance of buildings and/or vessels" and that respirable asbestos fibers capable of causing pulmonary disease were released in the use of defendants' asbestos-containing products. The complaint contains no further details concerning the actions of any defendant. Plaintiff concluded the strict liability count by alleging that the products were unreasonably dangerous and defective and, as a result, caused plaintiff's illness. He concluded the negligence count by alleging that defendants acted negligently, causing plaintiff's illness.

On various dates beginning on January 22, 2003, which was 61 days after he filed the complaint, plaintiff sent letters to defendants, each of which provided further details of that defendant's alleged actions.[4] He did not file any of the letters with the court. In each letter, plaintiff identified one or more contracts between the defendant and the Portland Public Schools for construction or remodeling work on a public school; among other things, each contract involved installing asbestos products. Those contracts related to work done in the 1940s, 1950s, and 1960s. Plaintiff then stated that plaintiff had worked for the school district from 1974 to 1989 as a refractories worker and that that work required him to "work in and around boilers, insulation, and the mechanical structures at virtually every Portland Public School facility in this district." After defendants filed their motions for summary judgment, plaintiff filed an affidavit in which he stated that the insulation on the pipes and boilers in every school was damaged to some extent and that handling the damaged insulation while making repairs caused it to release fibers. Plaintiff did not include that information in the letters that he sent to defendants.

On February 18, 2003, defendant Congoleum Corporation (Congoleum) filed a motion for summary judgment. In accordance with the provisions of one of the general orders, the remaining defendants subsequently joined in the motion.[5] Congoleum based its motion on "the plaintiff's failure to identify any exposure to asbestos-containing products

---

[4] Plaintiff sent some of the letters after defendants had filed their motions for summary judgment.

[5] Plaintiff later dismissed his claims against Congoleum but, in accordance with the applicable general order, the other defendants' joinders in Congoleum's motion remained pending as independent motions.

that [Congoleum] allegedly made or [sold], as required by this Court's General Order Re: Pleadings and Product Identification." In response, plaintiff attacked the enforcement portion of the general order. "Defendant does not contend that plaintiff lacks evidence on which a reasonable jury could find that [defendant] is liable for [plaintiff's] asbestos-related lung disease. Rather, it contends that plaintiff should be precluded from presenting his evidence. * * * The motion should be denied because ORCP 47 does not authorize judgment under these circumstances." Plaintiff argued that he had no obligation to increase the specificity of his complaint unless a defendant first filed a motion identifying the alleged deficiencies in the complaint, something that defendants had not done. He also argued that his original complaint was sufficient to state a claim and that requiring additional specificity would force him to plead the evidence that he would prove at trial, not the ultimate facts that constituted a claim.

After giving the parties an opportunity to describe the product identification information that plaintiff had provided to each defendant, the trial court refused to consider the evidence that plaintiff presented in opposition to the motions for summary judgment, granted those motions, and later dismissed the case against defendants. The court based its actions both on the enforcement provisions of the general order and on ORCP 54 B(1), which authorizes the court to dismiss a case for a party's failure to comply with a court order. We conclude that in doing so the court properly enforced the requirements of the general order.[6]

In *Marineau v. A. P. Green Refractories Co.*, 201 Or App 590, 120 P3d 916 (2005), we considered a similar case in which the plaintiff had failed to produce a PID within the period that the general order required. After reviewing the record, we concluded that the plaintiff had not challenged the general order in the trial court but had argued only that any enforcement of the general order must be consistent with the Oregon Rules of Civil Procedure. *Id.* at 597. We first held that

---

[6] On appeal, plaintiff focuses much of his attention on issues that are relevant to the trial court's action under ORCP 54 B(1). In particular, plaintiff asserts that the court could not properly impose the sanction of dismissal for his failure to file a PID. Because we conclude that the court's actions flow directly from the general order, without regard to ORCP 54 B(1), we do not consider those arguments.

the general order gave the plaintiff more generous opportunities to amend his complaint without leave of court than the rules normally required and, thus, that its provisions were consistent with the rules. *Id.* at 597-98.

In *Marineau*, we next considered whether the trial court erred in granting the defendant's motion for summary judgment. The plaintiff's complaint did not allege which of the defendant's products exposed the plaintiff's decedent to asbestos or any of the other facts relating to asbestos exposure that the general order required the plaintiff to disclose in either the complaint or the PID. Without those allegations, we held, the complaint did not state a claim against the defendant. The plaintiff did not attempt to correct the defect by filing a PID until after the defendant filed its motion for summary judgment. By that time, the plaintiff could file an amended complaint only with the trial court's leave, and the trial court acted within its discretion in denying it leave to do so. Indeed, any other action would have effectively abrogated the enforcement provision of the general order. Thus, we held, the trial court did not err in refusing to consider the plaintiff's evidence in opposition to the motion for summary judgment or in granting that motion. *Id.* at 598-600.

In this case, plaintiff makes a broader attack on the court's authority under the general order than did the plaintiff in *Marineau*. Plaintiff makes two assignments of error. In the first, he assigns error to the trial court's granting of defendants' motions for summary judgment. In the second, he assigns error to its entry of judgment for defendants as a penalty for plaintiff's failure to comply with the general order. As we explained above, *see* 204 Or App at 262 n 5, we do not consider the trial court's authority under ORCP 54 B(1) to dismiss the case as a sanction for failure to comply with a court order, because we conclude that the general order itself supports the court's action. Thus, we do not consider many of the arguments that plaintiff raises under the second assignment of error. However, some of plaintiff's challenges to the general order are included in his argument on that assignment, and we consider those arguments.

In his first assignment of error, plaintiff argues that the evidence in the summary judgment record raises a genuine issue of material fact concerning each defendant's liability for plaintiff's exposure to asbestos. In making that argument, plaintiff assumes that the court was required to consider all of the evidence that he submitted in opposition to defendants' motions. That is, in fact, the only evidence in the record that is relevant to the issues that defendants raised in their motions. Defendants did not present any evidence to support their motions but simply pointed out that plaintiff's failure to file PIDs in accordance with the general order foreclosed plaintiff from presenting product identification evidence on summary judgment. Defendants were entitled to summary judgment, they argued, because his failure to file PIDs meant that plaintiff could not carry his burden under ORCP 47 C.

■ The issue of defendants' liability—which includes the issue of defendants' responsibility for the specific asbestos products to which plaintiff allegedly was exposed—is one on which plaintiff would have the burden of persuasion at trial. Thus, once defendants raised the issue, plaintiff had the burden of producing product identification evidence to oppose the motions for summary judgment. ORCP 47 C. Defendants had no burden of production; rather, by their motions they imposed a burden of production on plaintiff. The general order, however, prohibited plaintiff from meeting that burden; it thereby meant that the court could not consider any evidence that plaintiff presented. As a result, plaintiff can prevail on his argument that the evidence presented a genuine issue of material fact only if he can show that the general order, or at least its enforcement provision, was invalid. If the general order, including its enforcement provision, is valid, plaintiff failed to meet his burden of production, and the court did not err in granting the motions for summary judgment.

■ Plaintiff argues that the general order established pleading requirements that go well beyond what the Oregon Rules of Civil Procedure require; in particular, he argues that the general order requires him to plead his evidence, not simply the ultimate facts that establish his claim. In any case, plaintiff suggests, because the general order does not apply to

a properly pleaded complaint, his failure to file appropriate PIDs does not affect his ability to present evidence in opposition to the motions for summary judgment. In *Marineau*, we held that a complaint that was similar to the one in this case failed to state a claim; thus, we implicitly held that the complaint would be subject to a motion to dismiss under ORCP 21 A(8). 201 Or App at 598. Even if the complaint in this case would survive a motion to dismiss, however, it would not survive a motion under ORCP 21 D to make more definite and certain because its allegations "are so indefinite or uncertain that the precise nature of the charge * * * is not apparent." It would have been within the trial court's discretion, in ruling on a motion under ORCP 21 D, to require plaintiff to plead the facts that the general order requires a PID to contain. Those facts are not, in the context of this litigation, a pleading of evidence. Because plaintiff's complaint did not satisfy the requirements of ORCP 21 D, it did not satisfy the fact pleading requirements that the trial court described in the general order.

■    Plaintiff's argument that, consistently with the rules, the trial court had to act on specific motions—such as motions to make more definite and certain—specifically directed against this complaint also fails. The trial court adopted the general order for the precise purpose of avoiding the need to evaluate every asbestos complaint individually under the rules. Those complaints generally raise similar pleading issues, and the trial court applied an alternative and more efficient method of achieving the purpose of the pleading rules in this context. It did so in a way that is not inconsistent with the rules and is thus permissible under ORCP 1 D.[7] The general order excused plaintiff from complying with customary pleading requirements in its complaint, including the requirement of ORCP 21 D that the complaint be sufficiently definite and certain. In return, the general

---

[7] ORCP 1 D provides:

"References to 'these rules' shall include Oregon Rules of Civil Procedure numbered 1 through 85. General references to 'rule' or 'rules' shall mean only rule or rules of pleading, practice and procedure established by ORS 1.745, or promulgated under ORS 1.006, 1.735, 2.130 and 305.425, unless otherwise defined or limited. These rules do not preclude a court in which they apply from regulating pleading, practice and procedure in any manner not inconsistent with these rules."

order required plaintiff to provide the necessary specificity by filing a PID as to each defendant. The general order thus avoided a multitude of similar pleading motions, let the parties know what pleadings the court would consider adequate under the rules, and provided a method of arriving at adequate pleadings with a minimum of judicial involvement.

■      To summarize, under the general order, a plaintiff may file a complaint that would normally be subject to a motion under ORCP 21 D. The defendants do not need to file such a motion within the normal period; rather, they can expect the PID to provide the missing details. Only if a defendant believes the PID to be inadequate will it need to file a motion.[8] We do not find anything in the general order that is beyond the trial court's authority in managing a large number of similar complex cases. The court did not modify plaintiff's substantive pleading obligations and, in fact, gave plaintiff a simpler method of satisfying them and a longer period in which to do so.

■      Plaintiff's real objection is to the level of specificity that the trial court required in the PID. However, when it prescribed the requirements for a PID, the trial court in essence described the specificity that it would have required in response to a motion under ORCP 21 D. The court simply set out a uniform ruling that would apply to the large number of similar cases that were before it. We see nothing improper in that action. Contrary to plaintiff's argument, the court did not create a local rule without complying with the requirements of UTCR 1.050; it simply stated a uniform legal position that it intended to apply to a legal question that frequently came before it.

■      Under the general order, thus, plaintiff had two options. He could have filed a complaint that was sufficiently definite and certain to satisfy Oregon's fact pleading

---

[8] Plaintiff argues that the general order creates a procedural trap by eliminating a case-specific inquiry into the adequacy of his complaint and the accompanying opportunity to replead to avoid any identified defects. Plaintiff misunderstands the general order. Under that order, a plaintiff may file an insufficiently definite complaint, provided that it later makes it definite by filing a PID. If a plaintiff does so and the defendants do not move against the PID, the plaintiff's pleadings are adequate. If the defendants successfully move against the PID, the plaintiff will have an opportunity to amend it in the normal fashion.

requirements, including those that the court intended to apply in response to motions under ORCP 21 D. In that case, it would not have been necessary to file a PID because the complaint itself would have contained the necessary information. Plaintiff did not take that first option. Rather, he chose to file a complaint that pleaded only the most general information about each defendant's involvement in allegedly causing his illness. Because he chose to file that kind of complaint, plaintiff had to comply with the second option, to file a PID as to each defendant. He did not do so. The letters that he sent to defendants after the time for filing PIDs had passed did not qualify as PIDs under the general order. Even assuming that they contained the required information, plaintiff did not file any of them with the court; in any case, none of the letters was timely even if it had qualified. The general order expressly states the consequence of plaintiff's failure to comply: He is "not permitted to offer product identification evidence as to a particular product and a particular defendant in response to [a] motion[ ] for summary judgment[.]" The trial court did not act outside of its discretion in following those provisions of the general order and refusing to consider the evidence that plaintiff presented in opposition to the motions for summary judgment. Because, as a result, there is no evidence in the record on a crucial issue on which plaintiff would have the burden of production at trial, the court correctly granted the motions for summary judgment and dismissed the case.

■■ Finally, we consider plaintiff's argument that he was entitled to present the evidence under *Hussey v. Huntsinger*, 72 Or App 565, 696 P2d 580 (1985). In *Hussey* and similar cases, we have held that, when the evidence that a party opposing a motion for summary judgment presents in support of its opposition goes beyond the scope of the party's pleadings, it may be appropriate to treat the party's pleadings as amended to conform to the evidence. *See also Mittleman Properties v. Bank of California*, 131 Or App 666, 670, 886 P2d 1061 (1994); *Federal Savings and Loan Ins. Corp. v. Johnson*, 97 Or App 250, 254 n 4, 776 P2d 24 (1989). That rule applies primarily when the moving party did not argue to the trial court that the evidence was beyond the scope of the pleadings and when the nonmoving party did not

seek to amend its pleadings; the purpose of the rule is to avoid a procedural trap for the nonmoving party. *See Hussey*, 72 Or App at 569. When, however, the nonmoving party seeks to amend its pleadings and the trial court implicitly or explicitly denies the request, the *Hussey* rule does not apply. In that situation, the trial court has considered the issue and ruled on it; there is no basis for treating the pleadings as implicitly amended to conform to the evidence. *See Permapost Products Co. v. Osmose, Inc.*, 200 Or App 699, 702-05, 116 P3d 909 (2005) (defendant objected to evidence of fraudulent concealment as beyond scope of pleadings; trial court's grant of defendant's motion for summary judgment was implicit denial of plaintiff's motion to file untimely reply conforming to the evidence).

In this case, the issue of the admissibility of plaintiff's evidence was before the court, and the court expressly refused to consider it because of the provisions of the general order. *Hussey* does not permit plaintiff to override the effect of the general order or of the court's ruling on the admissibility of his evidence.

Affirmed.